ROYAL INDEMNITY COMPANY, Respondent, *v.* THE LONG ISLAND RAILROAD COMPANY, Appellant.

First Department, December 18, 1939.

*Ralph E. Hemstreet* of counsel [*Louis J. Carruthers*, attorney], for the appellant.

*William E. Lyons* of counsel [*F. Matthew Buermann* with him on the brief; *Ireland & Cohen*, attorneys], for the respondent.

DORE, J. Plaintiff, assignee of a cause of action of a decedent's dependents under section 29 of the Workmen's Compensation Law, sues defendant for damages for decedent's death claimed to be due to defendant's negligence.

Decedent was driving an automobile in a northerly direction across defendant's railroad tracks on Islip avenue in the town of Islip, Long Island, when he was killed as the result of a collision

with the defendant's express train going sixty-five miles an hour in a westerly direction. The collision occurred about four-fifty-five in the afternoon of November 28, 1936, while the deceased was passing over the west-bound tracks at the crossing near the Islip railroad station. When the accident happened, an east-bound train had stopped at the station near the crossing; it was discharging passengers and had been standing there about a minute with its locomotive west of and near the crossing on the east-bound track. As this standing train was within the signal block, the crossing danger signals (consisting at the time solely of red flashing lights) were in operation, controlled by the stationary train. Due to the hour of the day and the condition of the weather, the east-bound locomotive's headlight was on. While the east-bound train was thus standing in the block, an express train on the west-bound track, not due to stop at that station, passed the crossing and the standing east-bound train at a speed of sixty-five miles an hour. It struck the automobile which deceased was driving, demolished the car, and killed the driver.

When the express entered the signal block at a distance of 2,700 feet east of the crossing, the flashing red signal lights, previously set in action by the standing train, were not visibly affected, since they were already activated by the east-bound train. The passing of this express in a westerly direction at such speed at the same crossing, while an east-bound local was standing near the crossing at the station and causing the warning light to flash, was not unusual. On the contrary, it was customary; defendant's witness testified that the two trains passed that way at that place about seventy-five per cent of the time. Except for the flashing lights, the crossing was unguarded by bell, flagman or gates, in spite of the fact that this unusual and potentially dangerous condition was caused almost daily.

Defendant's real contention on appeal is that the deceased was guilty of contributory negligence as a matter of law since he attempted to cross the tracks despite the fact that the red warning signal lights at the crossing were flashing. But there are circumstances in which it has been held not to be contributory negligence as a matter of law to cross railroad tracks at a crossing, although warning signal lights are flashing. (*Maiorano* v. *Long Island R. R. Co.*, 244 N. Y. 387, 391, 392.) On the very unusual and exceptional circumstances disclosed in this record we are of the opinion, despite appellant's contention, that the issue of contributory negligence was an issue of fact for the jury and that the trial court did not err in denying defendant's motion to dismiss.

This is not the case of an automobile driven at reckless speed across railroad tracks at a crossing, despite warning signals and in

the face of an obviously approaching train, in an effort to get across before the train. Appellant makes no claim that decedent was driving with reckless speed; its own witnesses testified deceased was not exceeding six miles an hour as he crossed the tracks.

There was a curve 550 feet east of the crossing, beyond which curve the approaching express could not be seen. Plaintiff's testimony and Exhibit 9 show that a person approaching the tracks from the south and driving in a northerly direction on Islip avenue, as the deceased was at the time, could, when twenty-five feet south of the rails, see eastward to the fifth telegraph pole, i. e., about 407 feet. When in that position one approaching the crossing could not then see the approaching express before it rounded the curve, 550 feet away. Plaintiff's witnesses testified that trees obstructed the view to the right. The fireman on the approaching express train that struck deceased's car testified that his train was going sixty-five miles an hour and that he did not see decedent's car until the train was quite close to Islip avenue, because there were " trees and things along there. You do not see them until they almost get on the crossing." Plaintiff's witness Schnalenberg testified that until a driver got about seven feet from the track he did not get a clear view down the track; and that when the driver's seat on a car is about seven feet from the track the front of a car would be at the first rail east-bound. A train traveling at sixty-five miles an hour, about ninety-seven feet a second, would cover the whole distance from the curve to the crossing in about five seconds.

At the time there were three cars crossing or about to cross the tracks; the first went across; the second, deceased's car, was struck; the third stopped after the accident. The drivers of the three cars all about to pass at the time were obviously relying on the fact that the red flashes were caused by the train that was standing still near the crossing. There was no proof deceased did not look. There is no certainty that if he looked even when twenty-five feet from the tracks the approaching express was then in sight. It was dusk, almost dark at the time; a light snow was falling, accompanied by a southwesterly wind blowing toward the direction from which the express was approaching. Plaintiff's witnesses testified they did not hear the whistle of the approaching train.

There was sufficient evidence, which it is unnecessary to detail here, to support the verdict of negligence against defendant. As this was a death case, the burden of establishing contributory negligence on the part of the deceased rested on defendant. Under the circumstances disclosed we think it was not established conclusively, and that such issue and the issue of negligence were issues of fact for the jury and not of law for the court. Those issues were

submitted to the jury in a charge to which defendant's counsel took no exceptions.

We consider, however, that the verdict of $35,000 was excessive and not properly supported by the evidence and should be reduced to $25,000, which, with interest from the date of death and costs, would reduce the judgment from $40,444.09 to $28,948.51.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event, unless plaintiff stipulates to reduce the judgment as entered to the sum of $28,948.51, in which event the judgment, as so modified, and the order are affirmed, without costs.

GLENNON, COHN and CALLAHAN, JJ., concur; MARTIN, P. J., dissents and votes to reverse and dismiss the complaint.

MARTIN, P. J. (dissenting). The Royal Indemnity Company, which had issued a policy of workmen's compensation insurance to one Morgan Belmont, instituted this action under the provisions of section 29 of the Workmen's Compensation Law. It is alleged that the death of Mr. Belmont's chauffeur, one Carl Danielson, was caused by the negligence of the defendant herein.

The deceased was killed when the automobile he was driving was struck by one of the trains of the defendant railroad company. The uncontradicted testimony established that two warning signals, known as blinker or alternating lights, were operating in full view of the deceased as he approached the railroad tracks. These lights flashed red at the rate of thirty-eight flashes per minute when set in motion by a train approaching from either the east or the west. Despite this warning signal the deceased proceeded to drive his car onto the tracks, and it was struck and he was killed. If the deceased did not see the warning signals he was guilty of contributory negligence. If he saw them but proceeded onto the tracks in the mistaken belief that the lights were set in motion by the east-bound train, then at a standstill in the station, instead of by the west-bound train which struck his automobile, he was also guilty of contributory negligence. In addition, all the affirmative evidence in the case discloses that the west-bound train gave the usual and customary warning signal by whistle as it approached the crossing.

I dissent and vote to reverse the judgment and dismiss the complaint.

Judgment and order reversed and a new trial ordered, with costs to the appellant to abide the event, unless the plaintiff stipulates to reduce the judgment as entered to the sum of $28,948.51; in which event the judgment, as so modified, and the order appealed from are affirmed, without costs. Settle order on notice.